1530.85 Whitaker v. Merit Systems Protection Board Mr. Jones? Good morning. Thank you, Your Honors. And may it please the court, I represent First Sergeant Nancy Whitaker, a 55-year-old female veteran of both Gulf Wars, a 30% or more disabled veteran who's a special education teacher for the Department of Defense Schools at Fort Campbell. And Ms. Whitaker has been passed over by virtue of her veteran's bypass, to which she was subject by the agency. And the question today is equitable tolling for her to challenge. Are you telling us that she was passed over because she was a veteran? That is our view. We have found that with but for the abrogation of those points, 10 to 15 points, she would have received those three, two or three positions. Two positions, three persons filled them. And it's an unusual case. This is viewed as a case of first impression below by the administrative judge of the Merit Systems Protection Board, who did decline to extend the doctrine of equitable tolling here. It's interesting in that other than specific notice of the bypasses for the two positions was provided. And the other than specific notice was, and this is conceded by the Merit Systems Protection Board and as well as the agency, that the appellant, Sergeant Whitaker, should have known she was passed over within 60 days because she discovered it during the discovery phase of a federal lawsuit pending in Nashville right now. And that's the notice, the discovery filings that came more than two years after the fact. First Sergeant Whitaker had no reason to believe that she had been passed over by virtue of a veteran's preference abrogation. These are statutory rights given. But even if we agreed with you on that position, the government argues that she had noticed as late as March 18, 2013, because at that point, her attorney, who I believe was a different attorney than you at the time, is that right? Mr. Whitaker, I think, maybe. But in any event, her attorney, no, that's her name, was a different attorney than you, or were you the attorney? There were two attorneys in two different actions. Well, in any event, as of March 18, 2013, her attorney, who filed his notice of representation, specifically referred to the report. So he specifically referred to the report, which provides the notice, and then she still didn't file for far more than 60 days thereafter. So even if you're right about your primary point, which is, was she given notice the way she should have been, there's no doubt that an attorney representing her came along and recognized the issue and expressly acknowledged it in a filing when he filed his notice of representation. So why shouldn't the tolling clock begin at least as of that day? OK, because there are two lawyers in two cases going on separate from this one at that point. The lawyer who actually expressly called attention to the bypasses is the lawyer in the Middle District of Tennessee. The lawyer who had just begun to represent her and provided a notice of representation, that was I. That was you. And that was. Good, then it's you. You're the one who referenced the report. Yes, I did not reference Veterans Bypasses, because the case in which she was pursuing with me was a class action with 15 people in anti-discrimination law. I thought you specifically referred to the report. I referred to the 600-page report of investigation, which is a report of investigation as to the discrimination claim for which she hired me to add to a class action proceeding against this agency. So that was a race discrimination retaliation case that's still going on at the US EEOC, in fact. The other case where these bypasses were expressly referenced and where the federal judge in October 6 of 2014 noted agency trickery as far as the Supreme Court is concerned, in our opinion, under Irwin, that express reference came clear. And that's why it took more than 60 days. Hold on a second. The report is not 600 pages, right? The exhibits attached to the report are long. The report itself is on page 105 of the record which you've attached. Sure. When we say report, we're referring to the report of investigation. And this is almost a document dump of all the material provided. It's 17 pages, is that correct? No, that's not correct. The report of investigation in the EEOC proceeding goes on for hundreds of pages. But this is the first 17 pages, at least. Oh, that's correct, yes. And then the rest of it is exhibits, is that correct? That's correct. And they're all enumerated. That's exactly correct. So for this to be adequate notice of a bypass, in our view, is not adequate notice at all. In fact, when you consider that when someone is deprived of a statutorily provided right, they're supposed to be given some kind of opportunity for recourse and notice of that. That hasn't happened to this day. Sergeant Whitaker has never been told by the agency that these bypasses occurred. She found that in documents compelled in an EEO case. And later, this issue came up in her federal discrimination case pending in Nashville. What is this report of investigation written for? For the discrimination. No, who is it for? Who is the reader of this report? The reader of the report of investigation is the agency itself, who hires the investigator to conduct an investigation of an EEO claim. The reader, the report is also intended for the EEOC administrative judge, who has not augmented the post-report discovery. And the report is also used by, of course, the complainant's counsel. And so how does it work? So it's given to Ms. Whitaker's counsel. So it's given to Ms. Whitaker's counsel, which presumably means it's given to her? I mean, it's done. Right, it's given to Ms. Whitaker as well. She had it. OK, but also she was given a copy of this? Yes, everybody had a copy of the report. They had it more than 60 days before. But on page 4 of this report, page 4, please turn to it, which is page 111 of the appendix, number 3, under middle school teacher, moderately full-time, severely impaired, in that number 3, it says, complainant explained she was a qualified candidate with a veteran's preference. She stated she was listed at the top of the referral list, but was not interviewed. She asserted the selecting official submitted a bypass letter in order to skip her and select another candidate. How can you say she was not aware and still remains unaware of the bypass? Oh, that's not the assertion at all. The assertion is that she was not furnished proper notice and still has not been. She made this assertion, which is merely an assertion. And she asserted it was done for retaliation. The whole basis of this report investigation and the preceding case that I had been on for three weeks was a retaliation case. And that's in the class action. And that case is still pending at the EEOC. So intertwined is this agency misfeasance or malfeasance with the case in Nashville. It's a separate attorney out of Clarksville, Tennessee, where the, which gave voice to this. It was in that discovery process that she actually found out that it was more than an assertion, that in fact, before this Passover, it was more than an allegation by name. She would have had those positions. And she apparently remains subject to such bypasses. And they can happen with no notice to her. That's the position of the government, that the government need not inform a veteran of this, that this entitlement has been revoked. And of course, I'll get to the constitutional problems with that. But there's at least a due process notice violation. There is a lot of discussion and attorney argument. But I didn't see anywheres where there was a piece of solid evidence where you said, submitted a bypass letter. But I gather these letters, they're not in our record. The two exhibits do not say bypass this person because she's a veteran and she's a complainer or whatever. Your Honor, those letters appeared in the case in Nashville in the Middle District of Tennessee. Nonetheless, I see no quotation from a letter which says what this summary says, they say that is a bypass letter to bypass this person because she is doing these things that make us uncomfortable. Right, well, in fact, there was. Explicitly, this is all the conclusion that you say should be drawn. Perhaps it should be, I don't know. But to understand the presentation. Oh, absolutely. The question is, this letter, this bypass letter that this appellant noticed. You call it a bypass letter. Did it have a title, bypass letter, bypass this person? The letter alternatively refers to bypasses. It's an explanatory letter. And in fact, it gives no regulations. It gives no statutes. It furnishes no factual basis. It did not give reasons even. It just said there's no entitlement here. And so that's the problem. Now, when you have a right to something so clearly provided by an act of Congress. Well, what does the act of Congress expressly say? OK, the veterans provides that a 30% or greater disabled veteran shall be entitled to points. No, no, no, no, this has nothing to do with points. This has to do with whether. Oh, notice. Yeah, right. So the act of Congress, isn't it section 3330AA2A, which says the VEOA requires a complaint to be, quote, filed within 60 days after the date of the alleged violation. It doesn't say after the date you've been given notice of something. It's after the date that you think your rights have been violated. And so at least as of the date of this report, when you received this report, she possessed a belief and allegation that she had been improperly bypassed and her veterans' preference rights had not been honored. Because that's what's clearly stated here. Oh, yes. Well, and so you're not required to have notice. The government's not required, unless I misunderstand, to give you notice in the form of here's a letter you now have 60 days in which to appeal. Rather, what the VEOA requires is that you must file a complaint within 60 days of the alleged violation. And so at least as of the date of this report, it seems clear that she possessed a belief that her VEOA rights had been violated. Oh, there's no doubt about all of that. We completely agree. We have briefed to that effect. We agree completely with that. We believe, though, that there is a requirement to notify that this taking has happened and to notify of the recourse that attaches to that. Where does that requirement come from? Judge Moore asked you about the statutory provision. Right. Where are you seeing that? Sure. As briefed, let's turn to the reply brief that cites to the VEOA at page 2. There's a means of redress under 3330A and B for a violation of a preference right or entitlement. And had Ms. Whitaker been apprised of that, and even of the fact that those had been worked prior to having an unrelated cases report of investigation, disclosed those facts, or three years later, discovery in a federal suit in Nashville, having discovered that there, she would have exercised those rights. Then that's why the Supreme Court in Irwin allows for equitable tolling. Even outside the 60-day period, it's very clear under the Fifth Amendment procedural due process. And that's something that this court has honored recently as 2007. In 1999, at Stone v. FDIC, there should be notice. Stone v. FDIC, this court said, quote, the due process clause of the Fifth Amendment requires that the employee be afforded notice both of the charges and of the employer's evidence and an opportunity to respond. And that's in the removal context. This vested right. Let me help you, because I think that you did quote something to us, but you may be failing to grasp it. Or argument can sometimes move quickly. You quoted to us in the competitive service under 3.3, I think it's 1.8 or something, there is expressly an obligation to give notice of bypass. But that clearly doesn't exist in the acceptance service. That same statute or regulation is not paralleled anywhere with regard to the acceptance service. Exactly, Your Honor. And that's why this is a case of first impression. No, well, you can't say something is a case of first impression, because there's a statute that says, in one particular form of service, there is an obligation of notice. And the statute doesn't impose that notice requirement with regard to another kind of government service. Right, but there's no delegation here either. And the judge herself said that this is a case of first impression as to other than specific notice as to whether the Fifth Amendment should be extended here. Should the Fifth Amendment be extended, as in a taking? All the way back to 1946, the US Supreme Court in Holmberg versus Ambreg. But you seem to be asking for a technicality, because she had notice. She had notice because she alleged, and she received this report indicating she alleged she was bypassed improperly, and her VEOA rights were violated. She alleged that. So there's no question she held a belief that they had done this improper thing more than 60 days in advance. And so you seem to be hinging your argument on a technical requirement of notice from the government, as opposed to her own clearly-admitted notice. That feels like that doesn't really comport with you, as you're describing. Your Honor, absolutely. We view the Fifth Amendment as anything other than a technicality. And we draw the parallel between Miranda rights. Those are a technicality, it would seem. I know that's a criminal realm. But the fact of the matter is, when one is subject to these benefits, and one is a 30% disabled veteran, and the statute does not leave a gap explicitly to allow that gap-filling and that discretion on the part of the agency, it's very important, particularly in the complex of multiple actions. So you would like me to hold, even though Congress did not put onto the agency an obligation of affirmative notice, and expressly did so in the competitive service, and expressly did not do so in the accepted service, but you would nonetheless like me to hold that that's a requirement, and that, therefore, she should win, even though she had actual notice and made these allegations herself, and had possessed the report that detailed them. And you would like me to hold that due process, nonetheless, due process, requires that the agency had provided it to her, even though she actually had it, and admitted she had it. That's exactly what we are asking for. Because a passive approach to due process, to us, is too casual. And we'll deal with that constitutionally with Supreme Court precedent on the rebuttal. OK. Let's hear from the board. We'll save you a rebuttal time, Mr. Jones. Ms. Reardon. Good morning. May it please the court. The only issue before the court today, in this case, is whether Ms. Whitaker filed a timely complaint with the Department of Labor. We believe that the board correctly held that she did not, and therefore denied her request for corrective action. Ms. Reardon, is that the issue? Or is the issue whether there was an error in refusing to equitably toll? I'm getting to that, Your Honor. OK, well, that's why I'm not sure. I want to understand. I'm very confused by the argument thus far. And I want to understand what the issue is on appeal. I thought the only issue we, I kind of think, I thought that they had acquiesced in the idea that she didn't file timely, but the decision should be equitably toll. That is correct. Since they acquiesced that she did not file a timely complaint with the Department of Labor, the issue now is whether or not Labor and the board was correct in finding that she did not qualify for equitable tolling. We contend that the only two ways she could qualify for equitable tolling is that she had to file a defective complaint with Labor within the time frame, which they also admits that she did not. And equitable tolling will only apply if they put forth some evidence that the agency tricked her into missing her filing deadline. OK, time out. You don't have to, I mean, what you just said is there are only two ways to establish equitable tolling. I don't know why you would say that. You don't have to say that to win this case, right? There could be other ways. What about if she was sick and in a coma and didn't, you know, I mean, the right, like, those aren't the only two ways that one could establish equitable tolling. No, there are two ways applicable to this particular case. OK, so the government's position is not that there are only two ways to establish equitable tolling, right? Yeah, correct. You're correct. Ms. Whitaker did not put forth any evidence that the agency tricked her into missing her filing deadline. She alleges that she became aware on April the 4th in a separate proceedings. The agency and the board made a determination that she became aware at least when she received the report of investigation. In addition to that, if you look at JA 108-124 or 105-106, you will see a synopsis of the report of investigation. Granted, the report of investigation was some 400 pages long, but the report had a synopsis at the beginning, which was 17 pages long. It also had an index to everything else in that report. In that report, the report found that Ms. Whitaker responded to affidavits from various of the agency's employees and agency's officials saying that she had been bypassed and also given the reasons for the bypass. Now, the report of investigation was a culmination of the investigation of the EEO that had taken place several months. So in order for Ms. Whitaker to have responded to these affidavits, she would have received the affidavits several months before the report was submitted to her. So she even knew about the bypass long before she even got the report of investigation. But at the latest, she knew about the 118. Yes, ma'am. At the latest, she got them when she got the report of investigation. So we believe that in addition, she had an obligation to exercise due diligence to come within 60 days of that particular date and file her complaint with the Department of Labor. In fact, the Department of Labor found the same thing that the board found, that she didn't put forth any evidence that would qualify her for equitable tolling. If you look at the Department of Labor's decision, and also if you look at the Department of Labor's decision that it issued in July 2011, which is adjoined appendix 317 and 318, we bring that up to show that Ms. Whitaker had filed several complaints with the Department of Labor before. So she was aware of the filing time. She was not new to this. So she knew she had to come within 60 days of when she had actual knowledge that she had been bypassed. And she did not do that. And if you look, if you look. Judge Moore, I'm sorry to interrupt for a second. Judge Moore said she knew at least by March 18th. But do you agree with that? Or do you think she knew beforehand? But the JA 105 has a date of February 22nd on it. And it's a letter addressed to her. So do you agree with the March 18th? Or do you think she got it in February? Oh, we believe she got it in February, when she got the report of investigation. But since the board said at least by March 18th, when her attorney filed his notice of representation, they used that date. All I am saying is that Ms. Whitaker had noticed long before then, in terms of the report of investigation. This is addressed to her home address with the date of February 22nd. February 22nd. And I'm saying she also knew before February 22nd. Because February the 22nd refers to her response to affidavits that had been submitted by various officials of the agency. And in her responses to those, she claimed that she was bypassed in order to prevent her from getting the job. So the affidavits that these officials submitted would have had to have been submitted prior to February the 22nd in order for Ms. Whitaker to have responded to them, simply because the February the 22nd, 2013 report of investigation was a culmination of a long investigation for which she had been intimately involved in responding to the affidavits from the various officials of the agency. So we believe that the board was correct when it found that she did not meet her, did not exercise due diligence in filing her complaint with the Department of Labor within the 60 days from when she had actual knowledge. And it's all right if we use March as the beginning date of the 60 days. But all I'm saying to the court is that she had knowledge long before the March date. And to the extent that they were referring to the court in Tennessee, that refers to a different school year, 2010, 2011, as opposed to 2012. And we believe that the board correctly denied Ms. Whitaker her request for corrective action because she did not meet her obligation to file. If, unless the court has additional questions for me. Any more questions for Ms. Reardon? Thank you, Ms. Reardon. Mr. Jones? Well, we don't have to argue over when she was notified and all of that. She was. She was told. She was so diligent. That's how she wound up not learning that she had appeal rights on these particular bypasses until the time when she filed those complaints pro se. She had been pursuing a federal case in Nashville, a case that has been stayed. The trial was supposed to be January 22nd. And Judge Trowder down there stayed that case because the constitutional issues here are so important. And the case there, there is information about the role of the agency's general counsel in bypasses all over the place. She was so diligent. She thought that her rights were being pursued. She did not understand as a pro se litigant as to these two bypasses before you that I was doing a retaliation class action. And the lawyer in Nashville in this other federal case that's now been stayed, pending the results here, was pursuing a discrimination case over different conduct entirely, but related to the bypasses. So we are very clear, Judge Moore, and I thank you for understanding and clarifying that we are asking that this Fifth Amendment do process right apply to these kinds of proceedings, just like in Cushman versus Shinseki and in Gamble versus Shinseki in 2009, both cases. We don't, we are not hiding. If you read our briefs, we're not hiding the fact that this all was out there in these reports of investigation and unrelated proceedings. After she was denied in May from the DOL recourse, that's when Ms. Whitaker hired me to pursue this kind of appeal to the AmeriCorps Protection Board. The only other point I would like to make that has not been briefed is that this accusation that this double veteran, 55-year-old sergeant, special ed teacher on Fort Campbell did not exercise diligence is not founded at all in the record. This was a person who was seeking in every way she knew how, including with two counsel in two different states, with two different cases in addition to this third one, to get out of the position she found herself in and to get a decent transfer, not even a promotion. We're not even talking about a lot of money here. And I believe that the policy underlying these veteran statutes, as well as the Fifth Amendment itself, would call for notice to be provided that is expressed. And I think that that can be, you can read the brief and the reply brief on that. But the notion that there was a lack of diligence is woefully lacking. It's incorrect. This is one of the most diligent people. And we argue that this is a case where equitable tolling would apply. And so that her case should be reviewed. Let's just get into why they passed her over all these times. We're not asking for a dispositive ruling, though we contend. And in closing, I reassert that the veterans, that these bypasses, these regulations that the administrative judge felt she did not have the capacity to rule on the constitutionality of are violative for the reasons stated in our briefs about the presentment clause and the Fifth Amendment. And we're prepared to hold to that. Are there more questions? Thank you, Mr. Jones. Thank you. And it's written. The case is taken under submission.